# RECORD NO. 21-1543

In The

# United States Court Of Appeals
## For The Fourth Circuit

**TERRI COWGILL,**

*Plaintiff – Appellant,*

**v.**

**FIRST DATA TECHNOLOGIES, INC.;
FISERV SOLUTIONS, LLC,**

*Defendants – Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

————————

## BRIEF OF APPELLANT

————————

**E. Patrick McDermott**
LAW OFFICE OF
  E. PATRICK MCDERMOTT
**266 Ogleton Road
Annapolis, MD  21403
(410) 990-0792**

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-1543__        Caption: __Terri Cowgill vs. First Data Technolfgies Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Terri Cowgill__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☐YES ☑NO
        If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                    ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                    ☐ YES ☑ NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?    ☐ YES ☑ NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature:  Edward Patrick McDermott /s/            Date:        5/27/2021

Counsel for:  Terri Cowgill

- 2 -

Print to PDF for Filing

# **TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES ...................................................................vi

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE.................................................................2

    PROCEDURAL HISTORY .................................................................2

    RULINGS FOR REVIEW...................................................................4

    STATEMENT OF THE FACTS ...........................................................5

        A.     Terri Cowgill's Disability .........................................5

        B.     Team Manager Rowe's Animus Toward Cowgill's
               Disability......................................................................7

        C.     First Data Human Resources Reduces The Illegal Final
               Warning And Threatens Cowgill................................8

        D.     Cowgill Suffered From Back Pain And Was Prevented
               From Healing Due To The Denial Of The Temporary
               Reduced Work Schedule..............................................9

        E.     Cowgill Earns A Perfect Midyear 2015 Evaluation. ...............10

        F.     Rowe Disciplined Cowgill For Call Handling For The
               First Time In Her Five Years Of Supervising Cowgill
               Placing Cowgill On Final Warning ...........................10

        G.     The Millisecond Miss On A Second Phone Call Results
               In Cowgill's Immediate Termination ......................13

        H.     The Discharge Decision...........................................14

I.      Cowgill Files An EEOC Charge .............................................15

J.      First Data Employment Law Counsel Identifies
        Comparators ...........................................................................15

SUMMARY OF ARGUMENT ..............................................................17

SUMMARY OF ARGUMENT [MOTION TO DISMISS] ...............................................................17

SUMMARY JUDGMENT .....................................................................17

ARGUMENT ...........................................................................................19

SUMMARY JUDGMENT .....................................................................19

Standard Of Review .............................................................................19

Discussion Of The Issues ....................................................................19

I.      FAILURE TO ACCOMMODATE HER DISABILITY
        WITH THE REDUCED WORK SCHEDULE (COUNT
        II) ..........................................................................................19

        A.      First Data, By Rowe, Failed To Accommodate
                Cowgill's Request For, And Agreed To,
                Temporary Reduced Work Schedule.............................19

                1.      Cowgill Needed A Reduced Schedule To
                        Heal And To Avoid Sitting Long Hours
                        During This One Month Rehabilitation ..............21

                2.      First Data Recognized This Was A
                        Reasonable Accommodation And Provided
                        Leave ...................................................................22

                3.      Rowe Denied A Reasonable Accommodation.......22

                4.      The Court Erred In Finding A Reasonable
                        Alternative Accommodation ................................23

5.    The Fourth Circuit Precedent Supports
      Cowgill ...................................................24

6.    Reasonable Accommodation Is An Issue For
      The Jury.................................................25

B.    First Data, By Rowe, Refused To Engage In The
      Required Interactive Dialogue........................................26

II.   THERE EXIST MANY GENUINE ISSUES OF
      MATERIAL FACT THAT BAR SUMMARY
      JUDGMENT ............................................................27

A.    There Is Direct Evidence Of Unlawful
      Discrimination ..................................................27

B.    McDonnell Douglas Framework .....................................28

1.    Plaintiff Satisfied McDonnell Douglas ...............30

2.    Cowgill Met Her Employer's Legitimate
      Expectations .........................................30

3.    The Circumstances Of Cowgill's Discharge
      Raise A Reasonable Inference Of Unlawful
      Discrimination Under the Fourth Prong of
      McDonnell Douglas. Pretext Is Found In
      The Totality Of The Circumstantial
      Evidence Set Forth ................................32

      a.    Animus By Rowe and Wood Toward
            Cowgill's Disability ...................................33

      b.    Pretext – Deviation From Company
            Policy And Standards................................34

4.    Deviation From Established Discipline
      Practice - You Can't Get Fired For This.............36

      a.    Comparator Evidence................................36

b.    Comparator A's Record Show Greater Misconduct And Progressive Discipline Prior to FWW ...........................37

c.    Comparator B Was A 78 Day Problem Employee.....................................38

d.    Progressive Discipline Abounded – Except For Cowgill ...................................39

C.    Genuine Issues of Material Fact .....................................40

D.    Spoliation And Refusal To Produce The Call Recording, Standing Alone, Bars Summary Judgment........................................................................42

E.    First Data Misled The Court...........................................44

F.    Temporal Proximity.........................................................45

G.    Heightened Scrutiny .......................................................47

H.    Rowe's State of Mind ....................................................47

ARGUMENT ...........................................................................................48

THE MOTION TO DISMISS ................................................................48

Standard Of Review...........................................................................48

Discussion Of The Issues ..................................................................48

I.    COWGILL EXHAUSTED HER ADMINISTRATIVE REMEDIES.......................................................................48

II.    THE MOTION TO DISMISS WAS PREMATURE. DISCOVERY WAS NECESSARY ON THE SCOPE OF AN EEOC INVESTIGATION AND AN EXPERT COULD HAVE ASSISTED THE COURT ON THIS DECISION MADE WITHOUT KNOWLEDGE OF THE SCOPE OF AN EEOC INVESTIGATION..............................51

iv

CONCLUSION ............................................................................................51

REQUEST FOR ORAL ARGUMENT .....................................................51

CERTIFICATE OF COMPLIANCE .......................................................52

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Anderson v. Liberty Lobby Inc.,*
    477 U.S. 242 (1986).................................................................. 41-42

*Baines v. Walgreen Co.,*
    863 F.3d 656 (7th Cir. 2017) .................................................. 34-35

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................48

*Capps v. Mondelez Global LLC,*
    844 F.3d 144 (3d Cir. 2017) .....................................................20

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)...................................................................40

*Chacko v. Patuxent Institution,*
    429 F.3d 505 (4th Cir. 2005) ...............................................49, 50

*Chappell-Johnson v. Bair,*
    574 F. Supp. 2d 87 (D.D.C. 2008)............................................43

*EEOC v. Mfrs. & Traders Tr Co.,*
    429 F. Supp. 3d 89 (D. Md. 2019)............................................20

*Dennis v. Columbia Colleton Med. Ctr., Inc.,*
    290, F.3d 639 (4th Cir. 2002) ...................................................45

*Fed. Express Corp. v. Holowecki,*
    552 U.S. 389 (2008)...................................................................49

*Foster v. Univ. Md. Eastern Shore,*
    787 F.3d 243 (4th Cir. 2019) ...............................................29, 39

*Hanna P. v. Coats,*
    916 F.3d 327 (4th Cir. 2019) ...............................................27, 33

*Haynes v. Waste Connections Inc.*,
    922 F.3d 219 (4th Cir. 2019) ..................................................................29, 30

*Hoyle v. Freightliner*, LLC,
    650 F.3d 321 (4th Cir. 2011) ........................................................................29

*Jacobs v. N.C. Admin. Office of the Courts*,
    780 F.3d 562 (4th Cir. 2015) ......................................................24, 25, 39, 45

*Johns Hopkins University v. Hutton*,
    488 F.2d 912 (4th Cir. 1973), *cert. denied*,
    416 U.S. 916, 94 S. Ct. 1622, 40 L. Ed. 2d 118 (1974) ...............................19

*Jones v. UPS*,
    502 F.3d 1176 (10th Cir. 2007) ....................................................................50

*King v. Rumsfeld*,
    328 F.3d 145 (4th Cir. 2003) ........................................................................45

*Laing v. Fed. Ex. Corp.*,
    703 F.3d 713 (4th Cir. 2013) ..................................................................28, 37

*McCoy v. Diamond Electric Mfg. Corp.*,
    2019 WL 691400 (S.D. W.Va. 2019)...........................................................40

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)................................................................................29, 32

*Morissey v. Laurel Health Care Company*,
    943 F.3d 1032 (6th Cir. 2019) ......................................................................26

*Muse-Ariyoh v. Bd. Of Educ.*,
    235 Md. App. 221 (2017) ..............................................................................42

*Pandazides v. Va. Bd. Of Educ.*,
    13 F.3d 823 (4th Cir. 1994) .................................................................... 25-26

*Phoenix Savings & Loan, Inc. v. Aetna Casualty Surety Co.*,
    381 F.2d 245 (4th Cir. 1967) ........................................................................19

*Price v. Thompson*,
    380 F.3d 209 (4th Cir. 2004) .........................................................................45

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ......................24, 29

*Reyazuddin v. Montgomery Cty.*,
    789 F.3d 407 (4th Cir. 2015) ......................................................20, 23, 24, 25

*Rhodes v. FDIC*,
    257 F.3d 373 (4th Cir. 2001) .........................................................................27

*Rohan v. Networks Presentations LLC*,
    375 F.3d 266 (4th Cir. 2004) ................................................................... 28-29

*S. Katzman Produce Inc. v. Yadid*,
    _F.3d _ (2d Cir. 2021), 2021 WL 2345644 ........................................... 23-24

*School Bd. Of Nassau County v. Arline*,
    480 U.S. 273, 107 S. Ct. 1123, 94 L. Ed. 2d 307 (1987) .............................25

*Silva v. Bowie State Univ.*,
    172 F. App'x 476 (4th Cir. 2006) ..................................................................45

*Smith v. B & 0 R. Co*,
    473 F. Supp. 572 (D. Md. 1979)....................................................................19

*Smith v. First Union Nat'l Bank*,
    202 F.3d 234 (4th Cir. 2000) .........................................................................49

*St. Mary's Honor Center v. Hicks*,
    509 U.S. 502 (1993)........................................................................................47

*Strothers v. City of Laurel*,
    895 F.3d 317 (4th Cir. 2018) ...................................................................30, 47

*Sydnor v. Fairfax Cnty.*,
    681 F.3d 591 (4th Cir. 2012) ...................................................................49, 50

*Thompson v. North American Stainless*,
    131 S. Ct. 863 (2011).....................................................................................51

*Tolan v. Cotton*,
    134 S. Ct. 1861 (2014)............................................................................36, 41

*Tonin v. Balt. City Pol. Dept.*,
    2020 WL 6746476 (D. MD. November 17, 2020).......................................26

*Tyndall v. National Educ. Centers*,
    31 F.3d 209 (4th Cir. 1994).........................................................................25

*Tyndall v. The Berlin Fire Company*,
    Civil Action No. ELH 13-02496 (D. Md. July 16, 2015) ............................50

*U.S. Airways Inc. v. Barnett*,
    535 U.S. 391 (2002)....................................................................................20

*United States ex rel. Hamrick v. GlaxoSmithKline LLC*,
    814 F.3d 10 (1st Cir. 2016).........................................................................35

*United States ex. rel. Oberg v. Pa. Higher Educ. Assistance Agency*,
    745 F.3d 131 (4th Cir. 2014) .......................................................................48

*Vasquez v. County of Los Angeles*,
    349 F.3d 634 (9th Cir. 2003) .......................................................................50

*Walker v. Johnson*,
    798 F.3d 1085 (D.C. Cir. 2015)..................................................................34

*Williams v. The Nashville Network*,
    132 F.3d 1123 (6th Cir. 1997) .....................................................................45

*Williams v. Va. Polytechnic Inst. & State Uni.*,
    451 F. Supp. 3d. 467 (E.D. Va. 2020) ........................................................26

*Wilson v. Dollar General Corp.*,
    717 F.3d 337, 345 (4th Cir. 2013) .........................................................20, 26

*Wilson v. Montgomery Cty. Bd. Of Trs.*,
    No. PWG-17-2784, 2018 WL 4300498 (D. Md. Sept. 10, 2018).................28

**Statutes:**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 1337 ...................................................................................1

29 U.S.C. § 2601, *et. seq.* ..........................................................*passim*

42 U.S.C. § 12101 *et. seq.* .........................................................*passim*

42 U.S.C. § 12111(9) ...........................................................................26

42 U.S.C. § 12111(9)(B) .....................................................................20

42 U.S.C. § 12111(10) .........................................................................20

**Regulations:**

29 C.F.R. § 825.220 .............................................................................33

29 C.F.R. § 825.220(c) .........................................................................33

29 C.F.R. § 825.702(c)(2) ....................................................................20

29 C.F.R. § 825.702(c)(2)(a) ...............................................................20

29 C.F.R. § 825.702(c)(4) ....................................................................20

**Other Authorities:**

Maryland Civil Pattern Jury Instruction (MCPJI) 1.16. ..........................42

## <u>JURISDICTIONAL STATEMENT</u>

The District Court had federal jurisdiction under 28 U.S.C. §1331 because this case arose under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101 *et. seq*. and The Family and Medical Leave Act 29 U.S.C. §2601, *et seq*. There was diversity jurisdiction pursuant to 28 U.S.C. §1337.

This Court has jurisdiction under 28 U.S.C. §1291. This is an appeal from Orders issued on February 4, 2021 including a Final Judgment dismissing all remaining claims on April 1, 2021. Appellant filed Notice of Appeal on May 3, 2021.

## <u>STATEMENT OF THE ISSUES</u>

1.      Did the District Court err when it concluded that Defendant did not fail to reasonably accommodate Plaintiff where Defendant first provided a written approval of Plaintiff's accommodation, which guaranteed a temporary reduced schedule to heal, but then permitted Plaintiff's supervisor to refuse to honor the temporary accommodation forcing the employee to work under pain contrary to the terms of the previously agreed accommodation?

2.      Did the District Court err when it concluded that plaintiff's termination was not due to her disability?

3.      Did the District Court err when it concluded at the Motion to Dismiss stage that Plaintiff had failed to exhaust her administrative remedy for her ADA Retaliation claim?

1

## STATEMENT OF THE CASE

### PROCEDURAL HISTORY

The Plaintiff, Ms. Terri Cowgill, filed a complaint against Defendant First Data Technologies Inc. ("First Data") and Fiserv Solutions LLC (Fiserv) alleging unlawful discrimination discharge in violation of the ADA (Count I); failure to provide reasonable accommodation under the ADA (Count II); Violation of the FMLA (Count III); Retaliation under the ADA (Count IV).  After filing her complaint Cowgill became a *pro se* plaintiff.  She motioned for appointment of counsel which was denied.  JA  at 37-40.

The Court granted First Data and Fiserv's Motion to Dismiss, dismissing Counts III and IV and dismissing Defendant Fiserv.  The Retaliation Count was dismissed under the reasoning that plaintiff's claim in her judicial complaint of Retaliation for refusal to accommodate, discipline, and discharge was not reasonably related to her Equal Employment Opportunity Charge ("EEOC") charge alleging violation of the ADA by refusal to accommodate, discipline and discharge.  The FMLA Count was untimely.

The Court later ordered dismissal of the remaining counts pursuant to First Data's Motion for Summary Judgment.  Cowgill denied that she engaged in the act that caused her termination.  She also raised spoliation of a customer service call

recording at the center of her pretextual termination, discriminatory pretext established by a compelling fact pattern of deviation from company policy, comparator evidence that no one ever got fired for Cowgill's conduct, heightened scrutiny, temporal proximity linking issuance of discipline and discharge to her disability accommodation requests, a direct threat to her job for exercising her FMLA and ADA rights, and two false statements by her manager to gain termination approval.

The Court relied on two misrepresentations by First Data. First, that Cowgill listened with her Team Manager to the call used to fire her and admitted to a mistake. Second, First Data misrepresented that Cowgill's claim that she made the proper opening was an "eleventh hour" claim.

The Court also found that where First Data first reasonably accommodated Cowgill with a temporary reduced schedule, and then Cowgill's Team Manager reneged and forced her to work long hours not healing from her injury, it was a reasonable accommodation to deny Cowgill the previously agreed accommodation. Without record evidence of the essential elements of the job or undue hardship, the Court held that this alternative accommodation was reasonable because of the need for overtime. There was no interactive dialogue when the agreed to temporary reasonable accommodation was abrogated.

3

## RULINGS FOR REVIEW

Cowgill appeals the February 20, 2020 Order on the Motion to Dismiss dismissing the Count IV Retaliation Claim.  This Order was erroneous for two reasons. First, the Court found that Cowgill did not exhaust her administrative remedies.  The Court did not have the necessary record developed from discovery and expert testimony to "look through" as to what constituted the scope of an Equal Employment Opportunity Commission ("EEOC") Investigation to determine what would reasonably be addressed in that investigation.  Second, if this Court were to find that such judicial competency did exist at this preliminary stage, the Court incorrectly applied the Fourth Circuit precedent to deny exhaustion.

Cowgill also appeals the April 1, 2021 Order dismissing the remaining Counts I & II.  The Court below failed to recognize that this case involved direct evidence of disability discrimination. Alternatively, if the McDonnell Douglas indirect framework was applied the case reeks of discriminatory pretext.

Cowgill also appeals the finding that First Data provided her a reasonable accommodation by reneging on its commitment to a reduced work schedule so she could heal and avoid long periods of sitting with her injured back.  Here the Court confused *temporary accommodation* versus *permanent accommodation*.

<u>STATEMENT OF THE FACTS</u>

**A.    Terri Cowgill's Disability**

Terri Cowgill worked for First Data as a Call Center Representative for over eleven years.  JA at 294 ¶ 2.  Cowgill's life changed when a negligent driver hit her while she was driving to work on Monday, January 5th, 2015.  Her injuries included a neck sprain, muscle spasms, back pain, and continuing severe occipital headache.  JA at 412-423.  Cowgill had a spotless work record for over nine years.  JA at 294.  Her performance evaluations, including the last one done in midyear 2015 before her termination, were excellent; for nearly a decade she always rated 3 out of a possible 3.  Id. at ¶ 4; JA at 322 ll. 4-21.

Cowgill's doctor ordered a reduced work schedule. JA at 287-290.  First Data's Family and Medical Leave Act ("FMLA") Leave Management Office ("LMO")  then approved a four-hour reduced work schedule, for three to five days per week from January 15 to February 20, 2021. JA at 291.  Cowgill was advised in the LMO letter that she should schedule her doctor's appointments outside of work time, that she may be eligible for recertification if her situation continued, and that she should contact LMO if her leave goes beyond 4 hours per day for 3-5 days per week. Id.  First Data's Employee Handbook contemplates this leave and how it is to be paid.  JA at 378-379.

Dawn Rowe, Cowgill's Team Manager, and immediate supervisor, refused to implement the First Data approved temporary work schedule. Id.; JA at 296 ¶¶ 17-20.

Cowgill's doctor diagnosed that sitting for prolonged periods of time was damaging to Cowgill's injured back and not allowing it to heal. JA at 299 ¶45; JA at 329 l. 21 – 330 l. 10; 346 l. 4 - 347 l. 8. He later advised Cowgill that her back "locking up" and not healing properly related to First Data's refusal to follow his medical instructions that Cowgill be provided a temporary reduced schedule so that she would not be sitting for an extended period. Id. at 346 l.13 – 347 l.8.

Cowgill testified that she needed therapy and a reduced schedule for a time to heal.

```
 9        Q      Okay.   Well, was there any other time that
10     you needed to have off for that they didn't give you
11     time off for?
12        A      Yeah.   He wanted me reduced to four hours
13     per day so I wasn't sittin' for eight to ten hours.   He
14     said -- or he believed that would help my back to heal.
```

JA at 336 ll.9 – 14.

```
 4     Q It -- was that a claim that you wanted to
 5     articulate? Or were you -- was it your position that
 6     that accident somehow impacted your job at First Data?
 7     A Oh, it did.
 8     Q In what way?
 9     A Well, the fact that I needed a reduced
10     schedule.
```

Id. at 346 at ll. 4-10.

Cowgill understood this reduced schedule to be mandatory to allow her to heal.  JA at 251 l.1 – 252 l. 5.

6

**B.    Team Manager Rowe's Animus Toward Cowgill's Disability**

Cowgill reported to Rowe for five years with a perfect record until the need for leave. JA at 299 ¶ 41.  Rowe's treatment of Cowgill changed when Cowgill obtained the reduced work schedule from the First Data Leave Management Department ("LMO").  Id. at p. ¶¶13-14; JA at 324 l.16 – 325 l. 14.  Cowgill testified that when she made the leave request the "harassment began".  Id.  Rowe began threatening her job.  Id.  Rowe continued to refuse to permit the reduced work schedule.  JA at 296 ¶¶20- 22.

Cowgill's need for reduced hours of work was reflected in one situation where her pain was so severe from sitting long hours that she had to walk off the job.  JA at 339 l. 20 – 340 l. 6.

On Wednesday, February 11, 2015, Rowe put Cowgill on a Final Written Warning ("FWW") for missing hours of work that were LMO provided FMLA leave.  JA at 375-376.   The FWW states that if Cowgill misses one more hour of work from February 11 to June 25, 2015, she could be terminated.  Id.  When she was given the FWW, Cowgill again asked Rowe again about her outstanding request for a reduced work schedule. JA at 296 ¶22.  Rowe repeatedly told Cowgill she was required to be at work.  Id.  Cowgill requested a meeting with Human Resources.

Rowe had served as a Team Manager at First Data since 2008; she had about seven years of experience when she placed Cowgill on FWW for taking FMLA leave.  JA at 277 ¶2.

**C.      First Data Human Resources Reduces The Illegal Final Warning And Threatens Cowgill.**

About February 18, 2015, Cowgill met with Annette Wood, Human

Resources. JA at 297 – 298 ¶¶ 27 – 32. In this meeting Cowgill advised Wood that

she was being harassed by Rowe due to the FMLA leave; Cowgill alleged it was

unlawful retaliation and that Rowe threatened her job by issuing her an FWW for

taking time off under the FMLA.  Id. at 297 ¶ 27; JA at 315 l. 6 to 316 l.16.

> Q And you got exact1y the result you wanted, which was that IAP retracted. Correct?
>
> A Well, I believe what I told Annette Wood or I know what I told her is that I was being harassed, and that now Dawn was threatening my job. So, I mean, if you want my opinion, I don't believe that there was ever an IAP for attendance to begin with.
>
> Q You don't believe it should've been issued in the first place?
>
> A No. I think that was just one of their harassment tactics.

Id. at 315 ll. 6-16.

In the meeting Wood either called, or pretended to call, Rowe. Id. at 315 l.

17 – 316 l.9. Wood then told Cowgill that "because she was such a good rep" she

was going to rescind the warning. Id.

Cowgill later reported this threat of retaliation because she opposed the

unlawful FWW in her June 30, 2018, email rebuttal to First Data's EEOC position

statement.  JA at 297 ¶¶ 28-29; 94-95 at top of page 95 (Cowgill states in email to

EEOC that Wood stated, "you need to do whatever you have to do to hold onto

8

your job"). <u>Id.</u> at 297 ¶29. Cowgill continued "So you see this was not a "simple error" that was "promptly rescinded". This was again an attempt to intimidate and harass me that was "rescinded" only after I had to endure their threats about my job, and then remind them that FMLA is a protected act." JA at 96.

Because of Wood's treatment and threat, Cowgill gave up any hope that HR would protect her from Rowe.  JA at 316 ll. 10-16.  Rowe was not investigated for unlawful harassment of Cowgill for taking medical leave even though Cowgill made this complaint under First Data policy prohibiting harassment due to disability and FMLA leave.  <u>Id.</u>  JA at 297 ¶30; JA at 370, 372.  The policy promises an investigation for complaints reported to HR. <u>Id.</u> at 371-372.  These work conditions forced Cowgill to look for other work.  JA at 344 l. 18 – 345 l. 17.

**D.    Cowgill Suffered From Back Pain And Was Prevented From Healing Due To The Denial Of The Temporary Reduced Work Schedule.**

Cowgill suffered pain and injury from Rowe's refusal to provide a temporary reduced schedule.  JA at 299 ¶ 45; 346 l.4 – 347 l. 8.

> Q     Do you believe Dr. Patalinghug has any
> 14     information or knowledge regarding your claims of
> 15     discrimination in this case? Disability discrimination?
> 16     A I recall us having a conversation where he
> 17     asked when I got the FMLA paperwork updated, he's like
> 18     what did they want from me. And I told him that they
> 19     were upset that I had missed a full, day, and he asked me
> 20     when and I told him when and I forget all of the
> 21     conversation, but I'm like they never reduced my schedule to
> begin with, and he's like well, maybe if
> 2      they would reduce your schedule then you wouldn't need a

9

3    -- my back was locked up that day. That was the -- why I
4    called out. And he's like well, maybe if they would have
5    reduced your schedule you -- for -- to partial days, you
6    wouldn't need a full day. And then he made a comment
7    something to the effect that they didn't care about me,
8    and I told him I know.

Id.

## E.    Cowgill Earns A Perfect Midyear 2015 Evaluation.

Cowgill received an excellent midyear 2015 review of 3 out of a possible 3.

JA at 294 ¶4.

Cowgill's condition continued.  In July 2015, she sought recertification for

her continuing accommodation. JA at 299 ¶¶ 42-44.  Cowgill testified that she

believed that her pending recertification and need for additional medical leave for

her disability including a possible reduced schedule, caused Rowe to fire her.  JA

at 318 ll. 3-8; 320 l.5 - 321 l.13; 322 l.4 - 323 l. 11; 299 ¶¶42-45.

## F.    Rowe Disciplined Cowgill For Call Handling For The First Time In Her Five Years Of Supervising Cowgill Placing Cowgill On Final Warning.

When Cowgill first obtained LMO approval for a reduced schedule and when

she sought recertification from LMO,  Rowe responded with FWW discipline.  On

Tuesday, August 4, 2015, at the time of Cowgill's pending recertification request,

Cowgill met with Rowe.  Rowe first began discussing Cowgill's medical condition

and advised her that her medical recertification had been processed that day. JA at

318 ll. 3-8; JA at 298-302 ¶¶ 34-44, 47-54; 63-66.  Rowe then told Cowgill she was

10

being placed on an Improvement Action Plan ("IAP") for call avoidance which, like the first bogus FWW, set a period where another violation would result in termination.  JA at 384-385.

This discipline was for a call incident on July 10, 2015. Id.  Rowe claims that she discovered this call on July 28, 2015 while doing her monthly quality reviews. JA at 280 ¶¶ 25-27.  Cowgill testified that this was a deviation from prior company procedure as she regularly received her call scores within two days – not three weeks later.  JA at 320 l.9 - 321 – l. 13; 327 ll. 4 – 10.  Cowgill stated that the use of an archived, older call was the first time in her experience with call performance feedback during her ten and one-half years of employment.  Id.

The Improvement Action Plan promised that starting on August 13, 2015, Cowgill and Rowe would meet every Thursday at 10:30 a.m. to coach her performance.  JA at 385 (*See* section "Expectation/SMART Goal").  Rowe breached this coaching promise.  JA at 300 ¶53; 320 l.9 – 321 l. 13. Cowgill had one meeting with Rowe where the extent of the coaching was Rowe's single ambiguous statement to Cowgill to "play pretty". Id.  There were an additional four Thursdays prior to Cowgill's termination where no coaching was provided, contrary to this FWW IAP. (August 20, 27, and September 3, and 10, 2015).  The IAP also stated that, "This document and your progress will be reviewed periodically during this process".  JA at 385. This did not happen.

11

When Cowgill was given the IAP on August 4, 2021; she immediately claimed it was because of her medical leave and disability. She stated to Rowe that since her medical condition she suddenly could not do anything right and asked if "there was a target on my back". JA at 353 ll. 3-6. In the prior eleven years of her career Cowgill was never disciplined for her conduct on a phone call. JA at 297 ¶31.

Rowe's immediate escalation from nine plus years of unblemished service to an FWW is unusual. When Rowe sought Corporate Headquarters approval to terminate Cowgill, Shelly Williams, the HR Director, questioned the move by Rowe to a Final Warning for the one call for someone with Cowgill's outstanding evaluations. JA at 397. Rowe's affidavit did not explain why she immediately moved to a Final Warning IAP where the FWW indicates termination as one many possible corrective actions. JA at 277-282; JA at 384-385. All comparators terminated for call avoidance that First Data counsel produced to the EEOC establish that the others were given warnings prior to being placed on a Final Written Warning IAP. JA at 399-405. (Letter from First Data Counsel to EEOC dated April 1, 2019, Requesting Reconsideration of EEOC March 21, 2019, Reasonable Cause Determination)

**G.    The Millisecond Miss On A Second Phone Call Results In Cowgill's Immediate Termination**

On September 9, 2015, Cowgill handled a call where the caller failed to identify himself but rather was talking in the background to another person while the television was playing.  JA at 300-301 ¶¶ 57-58. Cowgill remained on the phone call for about half a minute attempting to service the call.  Id. at 300 ¶57 (".I followed company procedures by asking if anyone was on the line three (3) times.").  Id.  As the caller was hanging up, Cowgill attempted to engage the caller.  It was a millisecond miss. Rowe used this call to fire Cowgill. JA at 281- 282 ¶¶38-47.

Cowgill testified in her deposition that the Data Center call sheet did not note a failure to do the opening, which would have occurred had she not engaged in a proper opening. JA at 359 l.1- 360 l.13.  When asked in her deposition about a tape of the call that then existed that she listened to with Rowe, Cowgill stated she did not hear her opening.  Cowgill testified that Rowe never played to her the entire tape of the September 9 phone call.  Id. at 360. ("I believe there's more to that call. I believe that Dawn only played for me what she wanted me to hear and then if you look at the unemployment, unemployment requested the recording which would have had then and they refused to turn it over.") Id. at ll. 4-8.  On September 30, 2015, about two weeks after Cowgill was terminated, First Data refused to produce the recorded call Cowgill was contesting. JA at 301 ¶59; 407. The *Employer Rebuttal* to Cowgill at Unemployment states, "The final incident

took place on or around the claimant's last day of work.  The employer is not going to provide a recording of the call". Id.  First Data also did not produce the call to the EEOC while under a duty to preserve evidence. JA at 410 ("Preservation of Records Requirement").  Rowe's affidavit confirms that First Data preserves these taped calls as she had at least a month of archived calls when she went back to flag Cowgill's first ever disciplinary call in over a decade.  JA at 280 ¶¶25-29.[1]

Rowe's affidavit in this case is inconsistent with her prior email where she reports that a voice said "Hello" at about 13 seconds into the call.[2] *Compare* JA at 281-282 ¶¶43-44 to JA 395.

On November 24, 2015, Unemployment took testimony under oath from Rowe and Cowgill concerning this September 9 phone call.  JA at 390-393.  The record reflects that First Data did not produce the tape for the hearing after previously refusing to produce it to Unemployment.  Id.

## H.    The Discharge Decision

Supervisor Dawn Rowe made the termination decision.  JA at 395.  The Corporate HR Director in Omaha, Nebraska, Shelly Williams responded to Rowe's request to terminate Cowgill by noting that Cowgill had a "3" in her evaluations and wanted to know Cowgill's 2015 mid-year rating.  Rowe responded that this was also

---

[1] Note that Rowe does not state in her affidavit that Quality Control flagged this call. This will be discussed *infra* as an important error in fact finding by the Court.
[2] Rowe reports this voice as that of a man.

14

a "3".  JA at 397.   Williams queried Rowe about why a person with such a high-performance rating would decline in performance and commented on the fact that Cowgill received a Final Warning for the first level of Corrective Action.  Id. Rowe claimed that Cowgill's performance was "progressively worse" over her tenure.  Id. ("Terri has had an opportunities in the past with the Client Experience and negativity about her job. It has become progressively worse as her tenure with the company.") Id.  Rowe claimed "calls monitored in the past" supported termination. Id.  This was inconsistent with Cowgill's excellent evaluations (3 of 3).

## I.    Cowgill Files An EEOC Charge

Cowgill believed she was unlawfully terminated and contacted the U.S. Department of Labor and the EEOC.  JA at 86.  Cowgill consistently stated to the EEOC that she was threatened for taking medical leave and was retaliated against and fired because of her disability.  JA at 94 (June 30, 2018 email); JA at 366 (July 3, 2018 email).  Cowgill explained to the EEOC she did not suddenly turn bad as an employee but rather took medical leave which First Data did not like. JA at 97.

## J.    First Data Employment Law Counsel Identifies Comparators

The EEOC issued a Reasonable Cause Determination that the ADA had been violated by First Data in its discharge of Cowgill.  JA at 399-405.  First Data's counsel asked for reconsideration of this Determination.  Id. at 399. First Data counsel provided evidence of "other employee's outside of Complainant's

15

protected class" who had been discharged for call avoidance.  Id.   The comparator data presented by First Data counsel shows that one, except Cowgill, was ever terminated for two incidents of call avoidance standing alone.  Id. at 401-405.

First Data Counsel represented to the District Court below that plaintiff failed to advise the Court as to whether these comparators were disabled or not. JA  at 438.  First Data previously stated to the EEOC that the purpose of the letter to the EEOC was to present comparator evidence of persons outside the protected class so that the EEOC would rescind its finding of Reasonable Cause that First Data terminated Cowgill due to her disability.  JA at 400.  The penultimate paragraph in the EEOC request for reconsideration states that this evidence ".demonstrates that other employees outside of Charging Party's class were also terminated for call avoidance." Id. at 401–405. The evidence also showed that other persons terminated for call avoidance, with much shorter periods of service, were provided additional levels of progressive discipline, were given additional chances while on the FWW after committing additional acts of misconduct and were eventually fired for engaging in greater acts of misconduct.  Id.

First Data policy provides progressive levels of discipline for Sexual Harassment. JA at 370, 373.  Rowe had the discretion on whether to terminate Cowgill for the millisecond miss call.  JA at 385 ("IAP Policy and Restrictions").

## SUMMARY OF ARGUMENT

### MOTION TO DISMISS

The Court made 2 errors in dismissing the Retaliation Count on Motion to Dismiss. Procedurally, it did not allow for a full record to develop on the scope of the reasonable scope of the EEOC investigation. Cowgill was unable to use discovery and expert witnesses to assist the finder of fact on the EEOC investigation, its scope, and that it would reasonably cover retaliation due to the same actors, acts, and context alleged in the Charge.

The second error was the failure to properly apply Circuit precedent to the facts of this case.

### SUMMARY JUDGMENT

The District Court had direct evidence of animus to disability by Wood's threat to Cowgill and the issuance of a bogus FWW. The Court failed to apply the facts of Wood's direct threat, and Rowe's threat by FWW, to find direct evidence of the intent to put Cowgill on FWW and then fire her in a two-step flushing not seen ever before in the company for the acts of call avoidance standing alone. This was because of her request for a reduced work schedule and then recertification from which these FWW's immediately ensued.

Alternatively, under the McDonnell Douglas framework, there is overwhelming evidence of pretext. There is a core credibility issue that must be resolved by the jury over what happened in the phone call that led to Cowgill's

17

termination.  A spoliation instruction is required. There is  a powerful inference from the disappearance of this tape which bars summary judgment.  Rowe also uttered a second false statement concerning Cowgill's job performance to obtain permission to fire Cowgill.  Finally there is overwhelming evidence of deviation from standard procedures, heightened scrutiny, discriminatory rush to issue an FWW when Cowgill sought leave for her disability, and firing Cowgill for a disciplinary record that no one ever got fired for.

The District Court erred in finding that Cowgill's requested accommodation was not reasonable on its face because it was an LMO written agreement. The Court erred in finding that Rowe's alternative "accommodation" of stay, sit in pain for long hours, and leave when the pain is unbearable was reasonable.

Overall, the Court engaged in a piecemeal analysis that did not honor the record as a whole. The Court made credibility resolutions and found facts that are within the province of a jury. The Court grabbed stock language of prior court holdings inapposite to the facts of this case, for example by confusing case law on temporary vs. permanent accommodation request under ADA reasonable accommodation analysis, and on the case law of destruction of key case evidence. On the issue of reasonable accommodation, the Court's reasoning contradicted First Data's LMO, Cowgill's doctor, and Cowgill's testimony that she needed time to heal and the showing that this temporary reduced schedule was a reasonable accommodation.

**ARGUMENT**

**SUMMARY JUDGMENT**

**Standard Of Review**

The Fourth Circuit has prescribed a very strict standard which must be met before summary judgment may be granted. *Smith v. B & 0 R. Co*., 473 F.Supp. 572, 578 (D.Md. 1979). Not only can there be no dispute as to the evidentiary facts, but there cannot be any disagreement as to the inferences or conclusions which might be drawn from those facts. *See*, e. g., *Johns Hopkins University v. Hutton*, 488 F.2d 912,918 (4th Cir. 1973), *cert. denied*, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974). Further, the party moving for summary judgment has the burden of clearly demonstrating that there is no genuine issue of fact, and any doubt as to the existence of such an issue will be resolved against it. *See Phoenix Savings & Loan, Inc. v. Aetna Casualty Surety Co*., 381 F.2d 245,249 (4th Cir. 1967).

**Discussion Of The Issues**

I. **FAILURE TO ACCOMMODATE HER DISABILITY WITH THE REDUCED WORK SCHEDULE (COUNT II).**

   A. **First Data, By Rowe, Failed To Accommodate Cowgill's Request For, And Agreed To, Temporary Reduced Work Schedule**.

To establish a *prima facie* case of failure to accommodate under the ADA a plaintiff must show:

(1)That she was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of the disability; (3) that with reasonable accommodation the plaintiff could perform the essential function of the position, and

19

(4) that the employer refused to provide such accommodations. *Wilson v. Dollar General Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).

At the summary judgment stage, the employee "need only show that an `accommodation' seems reasonable on its face," and then the employer "must show special (typically case-specific) circumstances that demonstrate undue hardship." *Reyazuddin v. Montgomery Cty.*, 789 F.3d at 414 (4th Cir. 2015) (*quoting U.S. Airways Inc. v. Barnett*, 535 U.S. 391 (2002). Cowgill does not need to establish a discriminatory motive for this refusal to accommodate, though one exists. *EEOC v. Mfrs. & Traders Tr Co.*, 429 F.Supp.3d 89, 106 (D.Md. 2019).

"Reasonable Accommodation" under the ADA includes a modified work schedule. *42 U.S. Code §12111(9)(B)*. "Undue Hardship" requires a detailed analysis. *42 U.S. Code §12111(10).* The Court found, *arguendo*, that Cowgill was disabled and met the first two prongs of the *prima facie* case. JA at 591.

Cowgill's FMLA leave accords with the right to reasonable accommodation under the ADA. *Capps v. Mondelez Global LLC*, 844 F.3d 144, 156-157 (3d Cir. 2017). ("We recognize that a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA, *see* 29 C.F.R. §825.702(c)(2), and to the extent that the District Court held otherwise, that was error.") The Code of Federal Regulations (CFR) states, "When an employer violates both FMLA and a discrimination law, an employee may be able to recover under either or both statutes." Id. at *29 §825.702(c)(2)(a).* The CFR explains employer dual obligations under the statutes. Id. at *§825.702(c)(2)&(4).*

20

### 1. Cowgill Needed A Reduced Schedule To Heal And To Avoid Sitting Long Hours During This One Month Rehabilitation

Cowgill insisted she needed the temporary reduced schedule to heal; her doctor demanded it; it was granted in writing per the doctor's medical submission; her back "locked up" later because she did not have the chance to heal, and her doctor was upset that the company allowed her to suffer by not giving her the reduced schedule to heal.  Cowgill testified:

```
7 Q   All right. So whether you were on the
6      schedule or not, nobody said you couldn't have that
7      time?
8 A   Not for physical therapy. Correct.
 9 Q   Okay. Well, was there any other time that
10     you needed to have off for that they didn't give you
11     time off for?
12 A  Yeah. He wanted me reduced to four hours
13     per day so I wasn't sittin' for eight to ten hours. He
14     said -- or he believed that would help my back to heal.
```

JA at 527 ll. 9-14.

```
Q     No. My question was your lawsuit is
5      claiming that you were terminated because you had a
6      disability. My question is, please tell me the facts or
7      pieces of evidence that supports that belief or that
8      claim that you're asserting.
 9 A   Well, my job was to sit at a desk all day,
10     and the doctor specifically said on the FMLA paperwork
11     that I couldn't sit for prolonged periods of time.
```

Id. at 323 ll. 4-11.

21

## 2. First Data Recognized This Was A Reasonable Accommodation And Provided Leave

The Court's decision errs in holding that even though Cowgill was provided the requested temporary accommodation of a reduced schedule in writing, she failed to establish that this was reasonable. <u>Id.</u> at 591-592. This flies in the fact of the fact that Cowgill was advised "Your request for an intermittent leave of absence meets the criteria and qualifies as a leave under the Family and Medical Leave Act". JA at 291. This "third prong" analysis failed to clock that this letter and language establishes an arguably irrebuttable presumption of a reasonable accommodation. JA at 591-592.

The Court also ignored the Handbook providing for such paid leave and other accrued time. It found that Cowgill's temporary reduced schedule request would "severely limit the number of weekly hours worked and Plaintiff does not offer evidence as to how she would have been able to adequately perform her job." <u>Id.</u> First Data LMO and Cowgill had agreed to an unreasonable accommodation - in the Court's eyes.

## 3. Rowe Denied A Reasonable Accommodation

The Court's fourth prong analysis misses that Rowe refused to carry through on the agreed to reasonable accommodation. The Court approved front-line supervisor nullification of expert and higher level LMO reasonable accommodation. From a public policy perspective, inviting supervisors to cancel ADA accommodations already agreed to does not make much sense under this remedial statute.

### 4.    The Court Erred In Finding A Reasonable Alternative Accommodation

The Court set a low bar not found in case precedent for what constitutes an alternative reasonable accommodation.  It reasoned that if there is overtime, and a disability where one needs a temporary reduced schedule, the temporary accommodation cannot be  reasonable.  In a slight twist on this theory that overtime trumps the ADA, the Court concluded that any offer of accommodation short of a temporary reduced work schedule is acceptable, even if this means one is required to work in pain as well as denied time to heal.

The Court failed by not requiring First Data's requisite showing of "significant difficulty or expense" required by the CFR and Circuit precedent. *Reyazuddin v. Montgomery Cty.*, 789 F.3d 789 at 414.  The Court implicitly found that First Data had this significant difficulty or expense without any record testimony where First Data sets forth the elements of an undue hardship.  Rowe does not provide any discussion or evidence of an undue hardship in her affidavit. JA at 277-282.

The Court ignored that Cowgill's doctor and Cowgill both requested the reduced schedule so that her back could heal.  JA at 592-596. The Court's piecemeal approach to weighing the evidence cited selective deposition testimony but ignored the facts in the record about the need for this reduced schedule and the pain that Cowgill was forced to work with.  This is a failure in the construction of evidence.  *See S. Katzman Produce Inc. v. Yadid*, _F.3d _ (2d Cir. 2021), 2021 WL

23

2345644 at *8, *citing Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The Court below failed to give proper weight to the word "schedule". It somehow missed that Cowgill need a four-hour schedule to heal. Rather, it conflated Cowgill's taking time off when her therapy was scheduled with a four-hour reduced work schedule needed for a person with a bad back who is in severe pain when sitting too long. JA 66 at 592.

The Court reasoned that because Cowgill walked off the job one job day in pain this was a reasonable accommodation in lieu of the promised temporary reduced schedule. Id. at 595-596. This mixed martial arts (MMA) "tap out" theory of reasonable accommodation is best left for the Spartan era or Upton Sinclair's "jungle".

First Data can't establish special circumstances that demonstrate undue hardship. *Reyazuddin v. Montgomery Cty.*, 789 F.3d at 414 - 415. First Data was permitted to refuse to provide the agreed-to reasonable accommodation and impose an unreasonable alternative accommodation. Id. at 416.

### 5. The Fourth Circuit Precedent Supports Cowgill

The Court below cited *Jacobs* to cancel Cowgill rights under the ADA. JA at 592. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015). First, the Court mistakenly holds one must meet the essential elements of the job without any record on the essential elements for Cowgill's job. Given that

the First Data Handbook permits the time off that Cowgill requested, one is left scratching one's head as to what the Court thought it knew about the essential elements without an underlying record or professed hardship defense. Moreover, *Jacobs* does not govern the facts in this case involving a temporary reduced schedule already agreed to by the employer. *Jacobs* reversed a summary judgment decision and found that a <u>permanent accommodation</u> that may result in lesser productivity was an issue for the jury.

*Tyndall* is inapposite to this fact pattern. *Tyndall v. National Educ. Centers*, 31 F.3d 209, 213 (4th 1994). The attendance holding was for a fact pattern where an employee had consistent problems coming to work, including frequent absences that prevented the employee from performing duties as a teacher. It was a <u>permanent accommodation</u> request case in an educational setting. This is a far cry from the present temporary reduced schedule fact pattern. Cowgill met her attendance requirements using leave consistent with the First Data Handbook. This LMO approval original agreement for a temporary reduced work schedule constitutes one of the "alternative employment opportunities reasonably available under the employer's existing policies." *School Bd. Of Nassau County v. Arline,* 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987).

### 6.    Reasonable Accommodation Is An Issue For The Jury

Whether an accommodation is reasonable is generally a question of fact for the jury. *Reyazuddin v. Montgomery Cty.*, 789 F.3d at 416, *citing Pandazides v.*

*Va. Bd. Of Educ.* 13 F.3d 823, 833 (4th Cir. 1994). This includes part time or modified work schedules of the exact type agreed to by Cowgill and First Data but reneged on by Rowe. *Williams v. Va. Polytechnic Inst. & State Uni*., 451 F.Supp.3d. 467, 476 (E.D. Va. 2020) *citing* 42 U.S.C. §12111(9).

### B.   First Data, By Rowe, Refused To Engage In The Required Interactive Dialogue.

Cowgill kept asking Rowe for her reduced schedule; Rowe refused. Cowgill's claim ripened when Rowe refused her schedule requests. *Morissey v. Laurel Health Care Company*, 943 F.3d 1032, 1042 (6th Cir. 2019) (claim ripens at point that employee asks for accommodation and the employer refuses.)

The Court below failed to address the interactive dialogue requirement under the ADA. Saying no to a previously agreed to reduced schedule request is not an interactive dialogue. When Rowe reneged and Cowgill requested the reduced schedule, First Data was required to engage in additional interactive dialogue. Offering a reasonable accommodation at one period does not insulate an employer from a challenge at another time. *Tonin v. Balt. City Pol. Dept*., 2020 WL 6746476 at *8.

> The "liability for failure to engage in an interactive process depends on a finding that, had a good faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions." *Wilson* v. *Dollar Gen. Corp.,* 717 F.3d at 347.

In a piecemeal analysis that ignored the record as a whole, the Court ignored the issuance of the bogus FWW, and the threat by Wood that Cowgill needed to protect her job and statement that the FWW was only removed because Cowgill was a good worker. This context of hostility was capped by the continuing refusal to engage in interactive dialogue over the temporary reduced work schedule. *Hanna P. v. Coats*, 916 F.3d 327, 355-356 (4th Cir. 2019)(*See* dissenting opinion's discussion of the good faith effort requirement to discuss the employee's need for reasonable accommodation and the importance of the interactive dialogue in this process.)

## II.  THERE EXIST MANY GENUINE ISSUES OF MATERIAL FACT THAT BAR SUMMARY JUDGMENT.

### A.  <u>There Is Direct Evidence Of Unlawful Discrimination</u>.

Direct evidence is "`conduct or statements that both reflect ... the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Rhodes v. FDIC,* 257 F.3d 373, 391-92 (4th Cir. 2001)).  Rowe held animus toward Cowgill's reduced schedule demands, disability and recertification and fired her for it.   JA at 320 l. 9 to 321 l. 13.   Rowe retaliated by issuing a bogus FWW for approved absence under the FMLA linking her animus to her disability with an intent to fire Cowgill by use of an FWW.  Rowe showed her cards early.

Rowe had years of experience as a Team Manager; she did not make a rookie mistake.  Attempting to fire an employee for taking FMLA leave is such an obvious error disclosing intent to terminate which was later effectuated for the

same motive. This bears directly on the contested employment decisions of 1) denying the temporary reduced work schedule; 2) issuing discipline and 3) terminating Cowgill.

Direct evidence is found when Annette Woods in HR stated that the FWW was being rescinded because Cowgill was a "good worker" and that she needed to "protect her job". Cowgill asks the Court to review the statement by Wood in the context that it was delivered and recognize that a reasonable jury can conclude that this reflected a discriminatory attitude toward Cowgill for demanding the reduced work schedule. *Laing v. Fed. Ex. Corp*. 703 F.3d 713, 718 (4th Cir. 2013). This was not a joke – it was a threat.

The words and context rebut any claim by First Data that this was a mere clerical error because Cowgill was told otherwise. The words uttered by Woods are not ones of apology for an oversight.

### B.    **McDonnell Douglas Framework**

Plaintiff must show that "(1) (she] was a 'qualified individual with a disability'; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination." *Wilson v. Montgomery Cty. Bd. Of Trs*., No. PWG-17-2784, 2018 WL 4300498, at *6 (D.Md. Sept. 10, 2018) (citing *Rohan v. Networks Presentations LLC*, 375 F.3d 266,272 n.9 (4th

28

Cir. 2004). The fourth step can be met by showing the prohibited conduct in which she engaged was comparable in seriousness to misconduct of other employees outside the protected class who received less severe discipline. *Haynes v. Waste Connections Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) citing *Hoyle v. Freightliner*, LLC, 650 F.3d 321, 336 (4th Cir. 2011).

If the defendant articulates a non-discriminatory reason, the *McDonnell Douglas* burden-shifting framework drops out of the picture, and the plaintiff must show that the adverse employment decision more likely than not was motivated in whole or part by discriminatory reasons. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, at 142-43 (2000). Pretext includes facts as to the protective status of Cowgill during her employment; Rowe's reaction, if any, to respondent's legitimate civil rights activities; and petitioner's general policy and practice. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-805 (1973).

If a plaintiff can show that she was fired under suspicious circumstances and that her employer lied about its reasons for firing her, the factfinder may infer that the employer's undisclosed animus was the actual cause of her termination. *Foster v. Univ. Md. Eastern Shore,* 787 F.3d 243, 50 (4th Cir. 2019) citing *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097 ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

### 1.    Plaintiff Satisfied McDonnell Douglas.

The court found that Cowgill met the first two prongs of the McDonnell Douglas framework.  It incorrectly held that Cowgill was not fulfilling her employer's legitimate expectations.

### 2.    Cowgill Met Her Employer's Legitimate Expectations

The Court acted contrary established precedent that it cannot ignore disputes of fact over a disciplinary record in issuing summary judgment.  *Haynes v. Waste Connections Inc.*, 922 F.3d at 224, n. 1 (4th Cir. 2019). *Strothers v. City of Laurel*, 895 F.3d 317, 332 (4th Cir. 2018) ("Heightened scrutiny, unfair evaluations, and arbitrary dress codes are likely to make a job more difficult and trigger responses from workers who feel compelled to protest their treatment, which may further interfere with their work.").  The Court failed to grasp these record facts and their import.  There is a clear dispute over Cowgill's job performance.  The FWW on August 4 deviated from policy because Rowe discriminatorily went back to dig up a violation when Cowgill sought recertification; Cowgill avers and testified that this was a departure from eleven years of precedent on call performance review.[3]

---

[3] Cowgill invites First Data's rebuttal that Cowgill was unaware that Rowe did this review every month because Cowgill was never cited due to her perfect call performance record for over a decade.  First Data is then invited to explain why Rowe accelerated Cowgill to an FWW on this one call for such a superstar.

Second, there is a genuine issue of material fact over whether Cowgill

engaged in improper conduct on the September 9 call.  Cowgill testified in her

deposition:

> Q Either one would have made little
> 18 difference. You were already on an IAP that said any
> 19 further instances of call avoidance could result in your
> 20 separation. Right?
> 21 A Correct. What I'm saying is though that the call opening would
> have been the first thing that she
> 2   would have docked me for if there wasn't a call opening
> 3 because they go right down the line and check them off.
> 4 **I believe that there's more to that call. I believe that**
> 5 **Dawn only played for me what she wanted me to hear and**
> 6 **then if you look at the unemployment, unemployment**
> 7 **requested the recording, which they would have had then**
> 8 **and they refused to turn it over.** So in November of
> 9 2015, they would have had the recording still. And also
> 10 in the employment -- unemployment file, she told the
> 11 unemployment investigator, the attorney, that after I
> 12 give my call opening that I am allowed to release the
> 13 call if I get no response.
> JA at 209 l. 17 -210  l. 13.

Cowgill met her employer's legitimate expectations, including under Rowe

for five years, until she became disabled and was targeted.  A rational finder of fact

can see the nine years of perfect evaluations and conclude she was a stellar

employee until she was disabled, and that what flowed was that Rowe went after

her with a bogus FWW and threatened her with her job. Annette Woods

benchmarked that Cowgill was a "good employee" in the conversation where she

delivered the threat to Cowgill when the disability arose.

31

The Court improperly credited First Data on disputes over genuine issues of material fact; it ignored a powerful pattern of circumstantial evidence satisfying the third and fourth prongs of *McDonnell-Douglas*.

Besides the issue of pretext for the August 4 and September 9 discipline incidents, the Court had another genuine dispute of material fact that went to the heart of termination for the September 9 call. Rowe falsely stated to Williams, in convincing Williams to allow her to fire Cowgill that Cowgill's performance was declining over a time frame when Cowgill was given perfect evaluation scores by Rowe. This was a false statement, or clumsy misdescription of a documented excellent evaluation record, that Cowgill had issues "in the past" and that her job performance over her tenure was progressively worse. This untruth calls into question the integrity of Rowe's statements about Cowgill's job performance. The Court failed to grasp Rowe's animus or the credibility disputes on genuine issues of material facts.

### 3. The Circumstances Of Cowgill's Discharge Raise A Reasonable Inference Of Unlawful Discrimination Under the Fourth Prong of McDonnell Douglas. Pretext Is Found In The Totality Of The Circumstantial Evidence Set Forth.

A rational finder of fact can infer that Cowgill was fired for her disability. There was a continuing pattern of hostility toward her disability culminating when Cowgill was up for recertification for disability leave where an issue was a reduced schedule. JA at 322 ll. 4-21. This is powerful timing.

32

### a.   Animus By Rowe and Wood Toward Cowgill's Disability[4]

Incidents establishing animus, and pretext, include:

1.      Rowe put Cowgill on a bogus FWW for taking sick leave that was agreed upon, and to insist on a reduced work schedule, also already agreed to by First Data, to intimidate Cowgill for exercise of her rights under the FMLA/ADA.  29 C.F.R. §825.220.  Rowe violated the Family and Medical Leave Act.  The FMLA prohibits employers from discriminating against an employee for exercising her FMLA rights. *Hanna P. v. Coats*, 916 F.3d at 347 ("...employers cannot use the taking of FMLA leave as a negative factor in employment actions. 29 C.F.R. §825.220(c)."). While the District Court concluded that "None of the examples Plaintiff provides rise to the level of illegality", this is plain wrong per *Coats*. JA at 583.

2.      Rowe refused to accommodate Cowgill, a second purposeful illegal act.  Id.

3.      Wood threatened Cowgill with her job for protesting unlawful harassment due to her injury and need for medical leave.  This is animus toward her disability.  Id.

4.      Rowe denied Cowgill her right to leave under the Employee Handbook denying her a term or condition of employment.

---

[4] Some of the acts are linked to other elements used in analyzing pretext. While this causes some redundancy, it is necessary to protect the record on the totality of each argument's supporting facts and to protect against mischaracterization.

5.    Rowe forced Cowgill to work in pain and to "tap out" instead of healing with a reduced schedule.

6.    Rowe placed Cowgill on two separate FWW's simultaneous with the occurrence and reoccurrence of requested leave for her disability.

7.    Rowe falsely stated that Cowgill did not make the opening on the September 9 termination call.

8.    Rowe falsely stated to Shelly Williams that Cowgill had longstanding performance issues when she did not for the purpose of accomplishing Cowgill's termination.

9.    Wood refused to investigate Cowgill's complaint of unlawful harassment contrary to the First Data Policy.

### b.    Pretext – Deviation From Company Policy And Standards.

Pretext can be demonstrated in a number of ways, including the employer's better treatment of similarly situated employees outside the Plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, or the employer's pattern of poor treatment of other employees in the same protected group as the Plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive. *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015).

An employer's unusual deviation from standard procedures can serve as circumstantial evidence of discrimination. *Baines v. Walgreen Co.*, 863 F.3d 656,

664 (7th Cir. 2017); *United States ex rel. Hamrick v. GlaxoSmithKline LLC*, 814

F.3d 10, 22 (1st Cir. 2016).

    Rowe deviated from past practice and standards by:

1.    The use of a stale July 10 call on July 28 to find a reason to put
Cowgill on FWW contrary to the past practice of addressing
call performance within a few days of the conduct.

    There is a genuine dispute of material fact as to whether this second FWW

issued on the heels of FMLA certification for her disability, and possible need for a

reduced schedule, was a pretext.  Cowgill testified that this practice was never

done over her eleven plus years of employment - Rowe claims she regularly

listened to stored call and scored them.  Cowgill stated she got feedback within a

few two days.  The Court improperly credited Rowe in this dispute.  JA at 588-

589.  The Court takes Rowe's word as gospel and ignores Cowgill's rebuttal

testimony and the suspicious timing of the first bogus FWW and the next one on

the heels of recertification.

2.    Refusing to coach Cowgill as set forth in Cowgill's August 4,
FWW IAP.

3.    Demanding termination of Cowgill for conduct that no one at
First Data has ever gotten terminated for.

4.    Immediately moving to termination for a millisecond miss
when the history of discipline at First Data shows you don't get
fired for such a minor error when on FWW.

### 4.      Deviation From Established Discipline Practice - You Can't Get Fired For This.

#### a.      Comparator Evidence

The Court decided that because there existed a written policy that "no particular order of discipline is required" it could ignore the overwhelming evidence that the facts of Cowgill's termination evidence disparate treatment. This "particular order" finding ignores embedded bias based on protected characteristics.  At its threshold it forecloses disparate treatment analysis and the entire body of employment discrimination law. This is also a piecemeal approach - an analytical silo amidst a field of robust evidence of disparate treatment.  This was in error.  *Tolan v. Cotton*, 134 S.Ct. 1861, 1868 (2014) ("….court credited the evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion……By weighing the evidence and reaching factual inferences contrary to Tolan's competent evidence, the Court neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party.").

Company disciplinary standards and practice show that Cowgill should not have been terminated based on company call avoidance practice.  Assuming *arguendo* that Rowe is telling the truth about the September 9 phone call and also telling the truth about Cowgill's long-term deterioration in performance; the evidence is clear that no one at First Data ever got fired for two call avoidance infractions without more!

This Court has long recognized the import of comparator evidence. *Laing v. Fed. Ex. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013). (comparator evidence is particularly probative of unlawful motive in the judicial playbook; comparator evidence is particularly useful to determine discrimination). Cowgill expects First Data to dissociate itself from counsel's comparator representations to the U.S. government to obtain a reversal of the EEOC Determination that First Data unlawfully terminated Cowgill; but this is problematic for them. First, counsel admitted to the U.S. government that this was the best comparator evidence it had of other employees being terminated for "call avoidance". Counsel represented that these comparators were outside of the protected class under the ADA. Even if one were to ignore the comparator admission and give First Data a free pass to cite them as comparators before the EEOC but deny them before this Court, the bottom law circumstantial evidence and inference remains the same – no one ever got fired for what Cowgill was fired for! This is powerful evidence of unlawful motive flowing from the mouth of First Data counsel.

### b.    Comparator A's Record Show Greater Misconduct And Progressive Discipline Prior to FWW.

Comparator A (# 273491) was given a prior warning before being placed on FWW - including at least this "Second Level PIP".[5]  Comparator A did not have a

---

[5] Hence Shelly Williams noticing this aberrant immediate move by Rowe to place long-time, "3 of 3" employee Cowgill on an FWW.

millisecond mishap – the act of call avoidance was accessing and watching an inappropriate website thus not working as compared to an alleged millisecond miss while working hard. Comparator A committed numerous prior violations of company policy including walking away from a pending call for ten minutes (hardly a millisecond miss), using a cellular phone on the production floor, and a second basis for termination for attendance issues. JA at 401–403.

A was only employed for a year and one half compared to Cowgill's eleven years with nine years of a spotless disciplinary record. Comparator A was also given special coaching attention that was denied Cowgill at the time of her FWW, including reassignment of her work location to sit next to two Team Leaders for support and assistance. Id. Cowgill was denied four coaching sessions promised in the Final Warning issued for one call that was subjectively considered bad by Rowe but not QCC – the first in the entire five years that Cowgill worked for Rowe. Cowgill, a disabled employee for whom management exhibited animus, was treated much more harshly than A, who was outside of the protected class of disabled employees.

### c.    Comparator B Was A 78 Day Problem Employee

Comparator B was hired on November 17, 2017 and terminated within three months (78 days) after numerous acts of employee misconduct. Employee

38

B was also afforded progressive discipline not provided to Cowgill. Id. at 404-405. Like Comparator Employee A, Employee B had continuing attendance problems, and had at least three (3) violations of workplace rules, including two within a few days. Comparator Employee B engaged in acts such as punching in and taking excessive time to go to his desk, and then walking away from his desk and putting the merchant on hold.  Employee B was placed on a final PIP for attendance and call avoidance. Employee B was given a Final PIP after engaging in two violations within 10 days. Id.

> ### d.     Progressive Discipline Abounded – Except For Cowgill

The disparate application of progressive discipline deserves special focus. First, the immediate placement on FWW is highly suspect.  Here the finder of fact can finder out that Rowe jumped to FWW two times when disability accommodation were sought by Cowgill.  Comparators did not immediately jump to an FWW.  Shelly Williams questioned it.  Rowe ignored her obligation to coach under that accelerated FWW because she was setting Cowgill up for termination.

The evidence establishes, and the Court ignored, "suspicious circumstances" that the courts recognize to find unlawful discrimination. *Foster v. Univ. Md. Eastern Shore,* 787 F.3d at 50.  This Court recognizes the important role of circumstantial evidence. *Jacobs v. N.C. Admin. Office of the Courts*, 780 at 576 (courts need not

39

credit the moving party's evidence when it is either contradicted *or* impeached by the nonmoving party).  Here there are contradictions in the record that include that one cannot get fired for these two offenses. Rowe added the false claim about Cowgill's long-term performance which caused the termination decision, and there is no evidence that one would be put on a FWW for one bad phone call.

A rational finder of fact is presented with robust evidence of disparate treatment in discipline from which can be drawn a rational inference of unlawful animus and motive by Rowe.

### C.   **Genuine Issues of Material Fact**

A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  One material fact is whether Cowgill gave the opening, which then dictates a finding that if she did provide the opening as she claims, then Rowe fired her contrary to company policy.  She states "To my recollection, on that call, no one responded to my greetings, and I only heard voices in the background, so I initiated a disconnection. After I did so, I heard a man say "Hello?" and I attempted to reconnect the call, but it was irretrievable."  JA at 301 ¶ 58.  Cowgill is contesting Rowe's version and has not admitted misconduct.  *See McCoy v. Diamond Electric Mfg. Corp*. 2019 WL 691400 at *6 (S.D. W.Va. 2019)(Plaintiff's disputing of employer claim on the pretext issue precludes summary judgment.)

The Supreme Court requires that at the summary judgment stage recognize that 1) genuine disputes are generally resolved by juries in our adversarial system and 2) weighing the evidence and reaching factual inferences contrary to one party's competent evidence neglects neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party. *Tolan v. Cotton* 134 S.Ct. at 1868 (2014). Key material facts where a genuine dispute exists include:

1.     Cowgill never admitted in her deposition that she did not make the introduction on the call. She did not hear the entire tape.  She made the appropriate openings.

2.     The Call Center QCC check sheet did not evidence a failure by Cowgill to make the openings in its separate call scoring metric. JA at 210-211. Thus fact, combined with the refusal to produce the call tape at the center of the dispute, is concrete evidence, and a genuine issue of material fact.

3.     There is powerful evidence that Rowe lied a second time about Cowgill's alleged long-term deteriorating performance to get Williams in Corporate to agree to the termination.  Cowgill's performance evaluations up to Mid 2015 do not show any type of deteriorating performance alleged by Rowe.

A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby Inc.*

41

477 U.S. 243, 248. These are genuine issues of material fact because a reasonable jury can, and should, if Cowgill is credited, conclude that Rowe used this phone call as a pretext to fire Cowgill due to her disability.

### D.    Spoliation And Refusal To Produce The Call Recording, Standing Alone, Bars Summary Judgment

First Data has refused to produce the recording of this phone call tape Cowgill immediately raised the claim that she gave the opening.  There is a causal relationship between the September 9 second call and termination. The Court ignores that under the facts and circumstances of First Data's refusals to produce the tape immediately after the termination at Unemployment, at the EEOC, and in this proceeding is powerful evidence that creates an inference barring summary judgment.  A spoliation instruction is appropriate. *See* Maryland Civil Pattern Jury Instruction (MCPJI) 1.16.

The case relied upon by the Court to give First Data a free pass on the disappearance of the recorded call does not apply to the fact pattern here.  JA at 15 (citing *Muse-Ariyoh v. Bd. Of Educ.* 235 Md. App. 221, 239 (2017).  *Muse-Ariyoh,* a Maryland Court of Appeals case,  relied on a case from the U.S. District Court for the District of Columbia which simply held that a destruction of evidence claim, standing alone, would not defeat summary judgment.  Id. (one cannot defeat a motion for summary judgment by only showing that some but not all notes in a

42

structured interview process were missing). *Chappell-Johnson v. Bair*, 574

F.Supp.2d 87 (D.D.C. 2008). The exact holding was "Simply put, without any

*evidence,* a generalized adverse inference, *alone,* will not support a jury verdict."

Id. at 898. Cowgill is not making a generalized adverse inference claim.

Cowgill's fact pattern is supported by other evidence that she made the call

openings, evidence of the QCC grading that did not indicate a failure on the

openings, deviation from policy, animus to her disability certifications establishing

intent to terminate and motive; temporal proximity, termination for conduct that no

other employee was ever terminated for, and a false statement to Williams to

obtain termination. This present case is not a naked, single, spoliation claim

unrelated to the evidence as a whole.

This seminal case fact pattern in *Chappell- Johnson* is a far cry from the

missing tape at the core of the termination and dispute over whether the

millisecond miss happened; a tape sought by the State of Maryland only weeks

after it was recorded to resolve this central factual dispute, and one admittedly in

the possession of First Data as evidenced by Rowe's use of these tapes for her

monthly QC review. This tape has disappeared. *Chappell-Johnson* supports

Cowgill's fact pattern. The Court erred in failing to properly apply case precedent

but to turn it on its head to again reward First Data misconduct.

43

From a public policy perspective, if First Data can deep six a tape recording that is central to a pretext issue and the Court allows it, why would any defendant produce damaging evidence?

### E.     First Data Misled The Court

The Court held that "Plaintiff admits that on the September 9, 2015 call she cannot be heard attempting to contact the customer prior to terminating the call". JA at 589.  This is plain wrong.  The Court was misled to rely on a deposition passage without full context – there was no such admission.  In its Reply to Cowgill's Opposition to Summary Judgment, First Data offers a deposition passage where the testimony of Cowgill is that she listened to the tape played by Rowe and did not hear her opening.  JA at 432-433.  First Data hid from the Court that Cowgill also testified that she did not believe that Dawn Rowe played the entire tape for her.

First Data also misrepresented Cowgill's testimony at deposition by providing testimony out of context to mislead the Court on a baseless claim of Cowgill's supposed eleventh hour claim that she made the opening.  Id. This caused piecemeal finding of fact untethered to the record as a whole.   The records shows that Cowgill made this same assertion before an Administrative Law Judge under oath in an Unemployment hearing soon after her termination.  This was only 5-6 weeks after the incident.  JA at 390-393.  Cowgill also advised the EEOC early

44

on.  JA at 95-96.  This was not the eleventh hour of this lawsuit as represented by First Data.  Cowgill believes this argument confused the Court and should be seen as dishonesty on a material fact.  *See Price v. Thompson*, 380 F.3d 209, 214 (4th Cir. 2004) (*citing Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290, F.3d 639, 648 (4th Cir. 2002). (Noting the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt.)

### F.    Temporal Proximity

The Fourth Circuit commands that "temporal proximity" between protected activity and adverse employment action is enough, by itself, to raise an inference of causation as a matter of law. *King v. Rumsfeld*, 328 F.3d 145,151 & n.5 (4th Cir. 2003) (finding 10-week period sufficient to create inference of causation); *Silva v. Bowie State Univ*., 172 F. App'x 476, 478 (4th Cir. 2006)(same); *Jacobs v. N. C. Admin. Office of the Courts*, 780 F.3d at 575, 579.  In *Price v. Thompson*, the temporal proximity analysis was nine months. *Price v. Thompson*, 380 F.3d 209, 213(4th Cir. 2004).  *Price* holds that an employer's knowledge coupled with an adverse action taken at the first opportunity satisfies the causal connection element of the prima facie case. Id. citing  *Williams v. The Nashville Network,* 132 F.3d 1123, 1132 (6th Cir. 1997).  The adverse action in Williams was the failure to forward an employment application.  Id.  *Price* looks at the first opportunity in

analysis of temporal proximity.  Here, Rowe engaged in her first opportunity to set Cowgill up for termination with a FWW when Cowgill first sought the reduced schedule.  This action failed because it was blatantly clumsy and illegal. Instead, she forced Cowgill to continue to work in pain, a continuing adverse action.  The next temporal proximity was when Cowgill sought recertification and Rowe then hunted for a call to use to again set Cowgill up for termination with an FWW.  This is powerful, contemporaneous timing linked to the theme that if you ask for leave, I will fire you.  The termination of Cowgill occurred within a month of that second FWW effort to fire Cowgill.  Whether one sees a continuous pattern of hostility to Cowgill due to her disability, or focuses on the recertification, there is temporal proximity plus animus, deviation from company policy, heightened scrutiny and discipline, and application of a penalty inconsistent with prior discipline.

The Court's made a critical fact finding error by misreading Rowe's affidavit.  Note 2 is incorrect. JA at 585 n. 2.  The Court incorrectly found that for the first FWW of August 4, the Quality Department "independently determined" Rowe's finding that Cowgill was "argumentative" with a customer citing Rowe's affidavit which says no such thing.  In fact, Rowe's affidavit states that Rowe, and Rowe alone, went to the archives and pulled the call.  JA at 280-281 ¶¶23-33. This is a critical erroneous finding of fact that if it had been done correctly confirms the pretext theory set forth *infra* that Rowe acted alone to dig up a call to interpret as a

policy violation to then issue the FWW.  Cowgill surmised that Rowe went back and dug the call out by herself.  JA at 327 ll. 4-11.  The one thing that is clear is that the Court made an erroneous finding of fact critical to the issues of temporal proximity and pretext.

### G.    Heightened Scrutiny

Cowgill was subjected to heightened scrutiny by Rowe, resulting in the "discovery" of the July 10 call that passed QCC scrutiny.  There was no customer complaint.  Cowgill avers this type of review was never done in her eleven years and that call feedback was provided with days. *Strothers v. City of Laurel*, 895 F.3d at 332 ("Heightened scrutiny, unfair evaluations, and arbitrary dress codes are likely to make a job more difficult and trigger responses from workers who feel compelled to protest their treatment, which may further interfere with their work.").

### H.    Rowe's State of Mind

The late Justice Antonin Scalia noted the critical importance of the state of mind of the mind of the person taking the employment action.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 520 (1993). (the "central fact is *not* a physical occurrence, but rather that employee's state of mind.") Cowgill has produced sufficient evidence for a rational finder of fact to infer that Rowe was hostile to Cowgill's disability and reduced schedule to heal by the various acts enumerated *infra*.

47

## ARGUMENT

### MOTION TO DISMISS

### Standard Of Review

In ruling on a motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the Complaint is viewed in the light most favorable to the Plaintiff. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  When ruling on a motion to dismiss, the court "may . . . consider documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex. rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

### Discussion Of The Issues

### I.    COWGILL EXHAUSTED HER ADMINISTRATIVE REMEDIES

Cowgill's EEOC Charge language states, "I believe that I was discriminated against because of my disability in violation of the American with Disabilities Act Amendment Act of 2008, **with respect to failure to accommodate, discipline and discharge**."(emphasis added)  JA 71.  The language of the EEOC Charge addresses a time frame that is coextensive with the retaliation. The charge identifies the acts of retaliation  – refusal to accommodate, discipline and discharge.  It covers the same time frame. The retaliation count in Cowgill's Complaint is consistent with the language of her charge.  JA at 21 ¶51.

So long as "a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation," she "may advance such claims in her subsequent civil suit." *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir. 2000). The proof is in the pudding. The record shows that this reasonable investigation actually encompassed Cowgill's retaliation claim. Cowgill consistently stated to the EEOC that she was threatened for taking medical leave and was retaliated against and fired because of her disability. JA at 94 (June 30, 2018 email); 366 (July 3, 2018 email).

This Court has expressed concerns that the exhaustion requirement should not become a tripwire for hapless plaintiffs. *Sydnor v. Fairfax Cnty*., 681 F.3d 591, 594 (4th 2012). The Court recognized that it should not set up insurmountable barriers out of overly technical concerns because "Title VII ... sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." Id. citing *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). *Sydnor's* admonishment that it would be inconsistent with this framework to require untrained parties to provide a detailed essay to the EEOC in order to exhaust their administrative remedies was ignored by the Court.

*Chacko* discusses the application of this reasonableness standard. *Chacko v. Patuxent Institution*, 429 F.3d 505 (4th Cir. 2005). Cowgill's charge satisfies the

exhaustion requirements discuss by *Chacko*. First, Cowgill did not allege a race case and then seek to litigate an age case. Id. at 509. Cowgill is not attempting to cross statutes by raising a Title VII for the first time in the courts when her EEOC charge addressed age discrimination under another statute, the ADEA. Id. She is not attempting to use a pay and benefits EEOC charge to now litigate failure to promote or to otherwise allege a different core of facts. Id. She is not seeking to allege a broader time frame - her EEOC charge temporal scope of retaliation and discrimination are coextensive. Id.

Cowgill addresses the same conduct and incidents (accommodation, discipline, and discharge) by the same decision maker. It is the same centerpiece of litigation. Id. at 510. *Jones v. UPS*, 502 F.3d 1176 (10th Cir. 2007)(The exhaustion requirement is satisfied when the conduct underlying the claim of disability and the retaliation claim are based on the same facts.). The failure to check the retaliation box by this hapless *pro se* EEOC charge filer is not fatal. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003)(holding that failure to check retaliation box did not bar retaliation charge for those employer acts prior to the filing of the charge); *Tyndall v. The Berlin Fire Company*, Civil Action No. ELH 13-02496 (D.Md. July 16, 2015)( …"review is not limited to checkboxes alone; it also includes the facts alleged.).

50

**II.    THE MOTION TO DISMISS WAS PREMATURE. DISCOVERY WAS NECESSARY ON THE SCOPE OF AN EEOC INVESTIGATION AND AN EXPERT COULD HAVE ASSISTED THE COURT ON THIS DECISION MADE WITHOUT KNOWLEDGE OF THE SCOPE OF AN EEOC INVESTIGATION.**

The Court prematurely granted First Data's Motion to Dismiss. The Court missed that the same centerpiece existed; this may have been prevented if the Court did not have the necessary facts at the Motion to Dismiss stage to understand what would be developed in a reasonable EEOC investigation. Discovery and expert testimony would have assisted the finder of fact on what the "reasonable" scope of an EEOC investigation. Cowgill was denied this opportunity by this premature ruling.

The record herein establishes retaliation under its relaxed standards of this law. *See Thompson v. North American Stainless*, 131 S.Ct. 863 (2011). Equity runs to Cowgill.

**<u>CONCLUSION</u>**

The Final Judgment and respective Orders should be reversed and remanded.

**<u>REQUEST FOR ORAL ARGUMENT</u>**

Cowgill respectfully requests Oral Argument pursuant to the Rules of the Court.


Respectfully submitted       /s/ E. Patrick McDermott
Dated: June 30, 2021          E. Patrick McDermott
                                Law Office of E. Patrick McDermott
                                266 Ogleton Road
                                Annapolis, MD  21403
                                (410) 990-0792
                                *Counsel for Appellant*

51

## CERTIFICATE OF COMPLIANCE

1.    This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

      this document contains <u>12,263</u> words.

2.    This document complies with the typeface requirements because:

      This document has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

Respectfully submitted    <u>/s/ E. Patrick McDermott</u>
Dated: June 30, 2021     E. Patrick McDermott
                      LAW OFFICE OF E. PATRICK MCDERMOTT
                      266 Ogleton Road
                      Annapolis, MD  21403
                      (410) 990-0792
                      *Counsel for Appellant*